FILED

April 13, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:41 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

James Yarbrough,
        Employee,

v.

Protective Services Co., Inc.,
        Employer,

And

Builders Mutual Insurance Co.,
        Insurance Carrier.

Docket No.: 2015-08-0574

State File No.: 48061-2015

Judge: Jim Umsted

---

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This case came before the undersigned Workers' Compensation Judge on March 30, 2016, upon the Request for Expedited Hearing filed by the employee, James Yarbrough, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether the employer, Protective Services Co., Inc., must provide medical and temporary disability benefits for Mr. Yarbrough's alleged work-related right-shoulder injury. For the reasons set forth below, the Court finds Mr. Yarbrough is entitled to continued medical treatment for his right shoulder as well as ongoing temporary disability benefits beginning September 4, 2015.[1]

### History of Claim

Mr. Yarbrough is a fifty-six-year-old resident of Shelby County, Tennessee. Protective hired him as a flooring installer on or about January 15, 2005. Mr. Yarbrough claimed he injured his right shoulder on April 16, 2015, after striking it on an overhead cabinet while at work. According to Mr. Yarbrough, he reported his injury the following day to Protective's Operations Manager, Parker Moore. However, Protective asserts it did not receive notice of the alleged work injury until June 19, 2015. On that date, Protective filed a First Report of Work Injury with its workers' compensation insurance carrier, Builders Mutual. Thereafter, on June 22, 2015, Builders Mutual sent Mr.

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

1

Yarbrough a panel of physicians from which he selected Dr. Robert Riley Jones as his authorized treating physician.

Mr. Yarbrough presented to Dr. Jones for the first time on June 26, 2015. He advised Dr. Jones he "raised up while working on a cabinet and hit his right shoulder at the acromioclavicular joint and anterior shoulder." (Deposition of Dr. Jones, Page 8, line 6-8). Dr. Jones diagnosed Mr. Yarbrough with biceps tendinitis, ordered x-rays of his right shoulder, and injected the shoulder. Dr. Jones also released Mr. Yarbrough to full-duty work.

Dr. Jones treated Mr. Yarbrough conservatively through September 4, 2015. During his September 4, 2015 visit, Mr. Yarbrough indicated his symptoms were worsening and he had been unable to work. Accordingly, Dr. Jones ordered an MRI and took Mr. Yarbrough completely off work. Mr. Jones had the MRI performed on September 21, 2015. It showed "narrowing of the subacromial space with impression on the supraspinatus musculotendinous junction by degenerative changes of the acromioclavicular joint" but no rotator cuff tear. Based on these findings, Dr. Jones recommended surgery and kept Mr. Yarbrough off work on September 22, 2015.

On September 25, 2015, Builders Mutual sent correspondence to Dr. Jones, asking him to address whether Mr. Yarbrough's injury arose primarily out of his employment. Dr. Jones responded by marking, "Yes" and noting, "Direct trauma to Right AC joint – Continued pain & popping." Despite Dr. Jones' opinion and an October 6, 2015 Utilization Review decision approving the surgery, Builders Mutual filed a Notice of Controversy with the Bureau on October 8, 2015, denying the requested surgery based on causation. The notice indicated the surgery was requested to repair a pre-existing condition not causally related to an alleged injury.

Mr. Yarbrough returned to see Dr. Jones on October 19, 2015. In his office note, Dr. Jones reiterated his opinion that Mr. Yarbrough's right-shoulder injury arose primarily out of his employment. Dr. Jones specifically stated,

> In reviewing this patient's record he probably did have some pre-existing problems. However, when he injured the shoulder he primarily injured the acromioclavicular joint and also caused an impingement causing pain in the biceps tendon. If he had not had this injury, then he would not have had any problems. Based on my best medical judgment this is greater than 50.1% related to his on-the-job injury and will require surgery to resolve his problem.

Dr. Jones changed Mr. Yarbrough's diagnosis to impingement syndrome of the right shoulder, contusion of right shoulder, and biceps tendinitis and indicated this diagnosis was consistent with Mr. Yarbrough's mechanism of injury. He also continued Mr.

2

Yarbrough's off-work status.

Mr. Yarbrough saw Dr. Jones once more on November 9, 2015. Dr. Jones noted Mr. Yarbrough continued to have problems with his right shoulder. Once again, Dr. Jones reiterated his causation opinion. He kept Mr. Yarbrough off work and indicated he would provide Mr. Yarbrough with some pain medication.

During the Expedited Hearing held on March 30, 2016, Mr. Yarbrough testified he hit his right shoulder on an overhead cabinet while working for Protective on April 16, 2015. He experienced immediate and intense pain that made him feel woozy but managed to finish the workday. According to Mr. Yarbrough, he spoke to his operations manager, Mr. Moore, the following day and asked for a lighter workload because he had injured his shoulder. Mr. Moore gave Mr. Yarbrough a lighter workload but did not offer Mr. Yarbrough any medical treatment for his shoulder or tell him to report the injury to anyone else. Mr. Yarbrough further testified he spoke to Mr. Moore prior to seeking medical treatment on his own on May 1, 2015. Mr. Yarbrough advised Mr. Moore he needed to see a doctor for his shoulder and renewed his request for a lighter workload. Once again, Mr. Moore assisted Mr. Yarbrough with his workload but did not offer medical treatment or tell him to report his injury to anyone. Mr. Yarbrough stated it was not until he brought in medical bills from his May 1, 2015 treatment that he received a panel of physicians, from which he selected Dr. Jones.

Mr. Yarbrough noted he has not been able to work a full week since the injury. He further mentioned Dr. Jones had not yet released him back to work since taking him off work on September 4, 2015. Mr. Yarbrough indicated he continued to have problems with his shoulder and asked the Court to order Protective to pay for the surgery Dr. Jones recommended.

Protective's Operations Manager, Parker Moore, and Office Manager, Leslie Hays, both testified on its behalf at the hearing. Mr. Moore testified he first learned of Mr. Yarbrough's injury in late May or early June. According to Mr. Moore, he asked Mr. Yarbrough about the status of a job, and Mr. Yarbrough advised he had injured his shoulder on another job several weeks earlier. Mr. Yarbrough indicated, however, he would work through it and finish the project as soon as possible. Thereafter, when Mr. Yarbrough brought in medical bills for payment, Mr. Moore directed him to Ms. Hays. Mr. Moore testified he knew of no written policies or rules associated with reporting a workers' compensation claim, but he typically referred injured employees to Ms. Hays. Mr. Moore stated he did not tell Mr. Yarbrough to report his injury to Ms. Hays when he first learned of it because Mr. Yarbrough stated he would work through it. Mr. Moore did not recall Mr. Yarbrough asking for lighter work or taking off work for a shoulder injury.

Ms. Hays testified she first learned of Mr. Yarbrough's injury when he came in to

3

file a First Report of Injury on June 19, 2015. According to Ms. Hays, Mr. Yarbrough advised he was moving a stove, and when he raised up, he hit his shoulder on a cabinet above him. While Ms. Hays stated Protective had no written policies in place for reporting workers' compensation claims, she asserted Mr. Moore was supposed to tell injured employees to report any injury to her. She stated Mr. Moore should not make a determination about the extent of the injury but should simply tell the injured employee to report the injury. Ms. Hays testified Mr. Yarbrough never called her to advise he could not work due to a shoulder issue, and she prepared a spreadsheet showing when and where Mr. Yarbrough worked since the date of his alleged injury. Ms. Hays explained the designation of "no work" on the spreadsheet meant either Mr. Yarbrough called out or there was no work available for him that day.

Both Mr. Yarbrough and Protective relied on the deposition testimony of Dr. Jones at the hearing. Mr. Yarbrough pointed to Dr. Jones' opinion that the diagnostic testing findings were consistent with the mechanism of his injury. (Ex. 17 at 10.) In addition, Mr. Yarbrough directed the Court to Dr. Jones' objective findings of coarse crepitus (Ex. 17 at 16) and an indentation on the rotator cuff (Ex. 17 at 17-18) to show anatomic changes resulting from the work injury. Moreover, Mr. Yarbrough focused on Dr. Jones' opinion that the work incident primarily caused Mr. Yarbrough's shoulder injury. (Ex. 17 at 21-22.) On the other hand, Protective noted that Dr. Jones admitted during his deposition that Mr. Yarbrough's MRI results showed only degenerative changes. (Ex. 17 at 24.)

Protective also had the deposition testimony of Dr. Claiborne Christian admitted into evidence at the hearing. During his deposition, Dr. Christian opined the work incident of April 16, 2015, did not cause any anatomic change in Mr. Yarbrough's right shoulder (Ex. 18 at 17) and Mr. Yarbrough's shoulder condition did not primarily arise out of the work injury. (Ex. 18 at 19.) Mr. Yarbrough argued, however, that Dr. Christian performed a record review only and did not perform a physical examination or review the films of his diagnostic testing. (Ex. 18 at 19.) Furthermore, Mr. Yarbrough pointed out that Protective paid Dr. Christian for his opinion. (Ex. 18 at 20.) Finally, Mr. Yarbrough noted that Dr. Christian agreed there could be microscopic changes within Mr. Yarbrough's shoulder joint that could constitute anatomical changes resulting from trauma. (Ex. 18 at 25-26.)

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

At an Expedited Hearing, Mr. Yarbrough need not prove every element of his claim by a preponderance of the evidence in order to recover temporary disability and/or medical benefits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27,

4

2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

*Compensability*

To be compensable, Mr. Yarbrough must show his alleged injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14) (2015). Further, he must show, "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E) (2015).

With these legal principles in mind, the Court finds Mr. Yarbrough injured his right shoulder on April 16, 2015, at work after striking it on an overhead cabinet. Mr. Yarbrough gave notice of his injury the following day to Protective's Operations Manager, Parker Moore. Mr. Yarbrough presented as a reasonable, honest and credible witness, and the Court accepts as correct his account of the April 16, 2015 incident. Dr. Jones is an authorized treating physician, selected by Mr. Yarbrough from a panel of physicians. As such, his opinion that the work injury contributed more than fifty percent in causing the need for medical treatment carries a statutory presumption of correctness. The Court also examined the opposing opinion of Dr. Christian, a non-treating physician who performed a record review only, and finds Dr. Jones' causation opinion has not been rebutted by a preponderance of the evidence. Accordingly, the Court finds that Mr. Yarbrough's right-shoulder injury is compensable.

*Medical Benefits*

Pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015), "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Any treatment recommended by a physician or chiropractor selected pursuant to this subdivision (a)(3) or by referral, if applicable, shall be presumed to be medically necessary for treatment of the injured employee. Tenn. Code Ann. § 50-6-

5

204(a)(1)(H) (2015). This presumption has not been rebutted. Accordingly, the Court finds Mr. Yarbrough is entitled to reasonably necessary medical treatment as recommended by his authorized treating physician, Dr. Jones, and as required by Tennessee Code Annotated section 50-6-204 (2015).

*Temporary Disability Benefits*

An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery. *Id.* The Court finds Mr. Yarbrough has been unable to work since September 4, 2015, when Dr. Jones took him off work due to his compensable right-shoulder injury. Accordingly, Mr. Yarbrough is entitled to temporary total disability benefits beginning on that date and continuing until he attains maximum recovery or is able to return to work. The parties stipulated Mr. Yarbrough's weekly compensation rate for temporary disability benefits is $932.80, the maximum compensation rate as of April 16, 2015.

**IT IS, THEREFORE, ORDERED** as follows:

1. Protective Services Company, Inc. or its workers' compensation carrier shall provide Mr. Yarbrough reasonably necessary medical treatment as recommended by his authorized treating physician, Dr. Jones, and as required by Tennessee Code Annotated section 50-6-204 (2015).

2. Protective Services Company, Inc. or its workers' compensation carrier shall provide Mr. Yarbrough temporary total disability benefits in the weekly amount of $932.80, beginning September 4, 2015, and continuing until he attains maximum recovery or is able to return to work. Past temporary total disability, benefits from September 4, 2015, to April 13, 2016 (222 days or 31.7 weeks), in the total amount of $29,569.76, shall be paid in a lump sum.

3. This matter is set for a Status Hearing on May 23, 2016, at 11:30 a.m. Central time.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after

6

entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 13th day of April, 2016.**

**Judge Jim Umsted**
**Court of Workers' Compensation Claims**

Status Conference:

A Status Conference has been set with **Judge Jim Umsted, Court of Workers' Compensation Claims. You must call 615-532-9550 or toll-free at 866-943-0014 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment

must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit of James Yarbrough (marked for identification only);
2. Declaration of Leslie Hays (marked for identification only);
3. Declaration of Parker Moore (marked for identification only);
4. Declaration of Sandra J. Noble (marked for identification only);
5. Declaration of Phillip Noble (marked for identification only);
6. Amended Declaration of Phillip Noble (marked for identification only);
7. Form C-20 Employer's First Report of Work Injury or Illness;
8. Form C-42 Agreement Between Employer/Employee Choice of Physician;
9. Form C-27 Notice of Controversy;
10. Form C-41 Wage Statement;
11. Utilization Review letter, dated October 6, 2015;
12. Correspondence forwarding panel of physicians to Mr. Yarbrough, dated June 22, 2015;
13. Deposition of Phillip Noble (marked for identification only);
14. Deposition of Leslie Hays (marked for identification only);
15. Deposition of Parker Moore (marked for identification only);
16. Deposition of Sandra Noble (marked for identification only);
17. Deposition of Robert Riley Jones, M.D.;
18. Deposition of Claiborne A. Christian, M.D.;
19. Methodist Germantown bill dated June 10, 2015;
20. Insurance form, dated May 14, 2015;
21. Methodist Healthcare bill, dated June 22, 2015;
22. Methodist Healthcare appointment reminder, dated June 9, 2015;
23. Spreadsheet of Mr. Yarbrough's jobs after April 16, 2015; and
24. Declaration of Andrew C. Clarke in Support of Attorney Fees and Costs (marked for identification only).

Technical record:
1. Petition for Benefit Determination;
2. Dispute Certification Notice, filed on December 2, 2015;
3. Request for Expedited Hearing;
4. Protective's Motion for Evidentiary Hearing;
5. Mr. Yarbrough's Response to Motion for Evidentiary Hearing;
6. Protective's position statements of November 10, 2015, and December 18, 2015;
7. Mr. Yarbrough's Motion to Strike Affidavits;
8. Order for Expedited Hearing, filed December 16, 2015;
9. Order Affirming and Remanding Order for Expedited Hearing, filed January 25, 2016; and
10. Mr. Yarbrough's Pre-Hearing Brief.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 13th day of April, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Andrew C. Clarke, Employee's Attorney | | | X | aclarke@accfirm.com |
| Catherine C. Dugan, Employer's Attorney | | | X | cate@petersonwhite.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**